# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5115 | **DATE** | 7/26/2004 |
| **CASE TITLE** | Emmitt G. Rule vs. Jewel Food Stores, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION GRANTING DEFENDANT JEWEL FOOD STORES, INC.'S MOTION FOR SUMMARY JUDGMENT [15-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

JUL 27 2004

date docketed

docketing deputy initials

**Document Number**

26

TBK

courtroom deputy's initials

2004 JUL 26 PM 3: 20

FILED 07

U.S. DISTRICT COURT

CLERK

JUL 27 2004

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMMITT G. RULE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 5115 |
| | ) | |
| v. | ) | Judge Mark Filip |
| | ) | |
| JEWEL FOOD STORES, INC. | ) | **DOCKETED** |
| | ) | |
| Defendant. | ) | JUL 2 7 2004 |

## MEMORANDUM OPINION GRANTING DEFENDANT JEWEL FOOD STORES, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Emmitt G. Rule, an African American man who injured his back at work, has

sued his employer, Defendant Jewel Food Stores, Inc. ("Defendant" or "Jewel"), under Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Civil

Rights Act of 1871, as amended, 42 U.S.C. § 1981 ("Section 1981"), and Title I of the

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). Mr.

Rule alleges that he was discriminated against on the basis of his race, disability, or at least

perceived disability by his employer as to him. Defendant has moved for summary judgment.

For the reasons stated below, Defendant's motion is granted.

### RELEVANT FACTS

On September 26, 1994, Mr. Rule began working at Jewel's Warehouse Complex in

Melrose Park, Illinois as a part-time Assembler and, in 1998, he was upgraded to the position of

full-time Assembler. Assemblers select merchandise from warehouses, stack the merchandise on

pallets, and position it on a loading dock, where it is then loaded on semi-truck trailers for

delivery to Jewel retail grocery stores. The Assembler position requires the ability to lift weights of up to 100 pounds with some frequency. (D.E. 20 at 2-4.)

In addition to the position of Assembler, two other types of Warehouse Complex jobs are relevant to the case: Janitor and Trailer Sanitor. Janitors are primarily responsible for cleaning and tidying the buildings and grounds. The Janitor position requires little, if any, heavy lifting. Trailer Sanitors clean out the truck trailers that are used to transport foodstuffs and other merchandise from the Warehouse Complex to Jewel's retail stores. Trailer Sanitors also are not required to do any heavy lifting but, at times, must climb over debris in unlit trailers. (*Id.* at 4; D.E. 22 at 7.) Thus, Assembler is the most physically demanding position (in that it commonly requires heavy lifting), and the job of Janitor has the lowest risk of injury and is the least physically demanding (because it requires no heavy lifting or climbing over debris in unlit trailers). (D.E. 22 at 7-8.) Of the three positions, Assembler, Janitor, and Trailer Sanitor, Mr. Rule considers Janitor the most preferable and Trailer Sanitor the least desirable. (*Id.* at 7-8.) As explained below, Plaintiff's suit concerns the fact that after he suffered an injury at work as an Assembler and took time off to recover, he was (for reasons the parties dispute) placed in the Trailer Sanitor position and his ability to move out of this position has been hindered by the relatively low job bidding seniority afforded to Trailer Sanitors. (D.E. 19 at 1-5.)

During the time period relevant to this case, the hourly employees at the Warehouse Complex, including Mr. Rule, were represented by the Chicago Truck Drivers, Helpers and Warehouse Workers Union ("CTDU"), and they were covered by a Collective Bargaining Agreement ("CBA") between Jewel and the CTDU in effect from April 1, 1998, to March 31, 2003. (D.E. 20 at 3.) Section 8.8 of the CBA requires that job openings be posted throughout

the Warehouse Complex and states that all employees have the right to bid for any posted jobs. Job vacancies are filled on the basis of the bidder's seniority, which is largely determined by the bidder's position. Trailer Sanitors are assigned the lowest level of job bidding seniority, part-time Assemblers are given the next highest level of seniority, and the highest relative seniority level is held by Janitors and full-time Assemblers.[1] In addition to position, seniority is also dictated by date of hire. (*Id.* at 5.)

On or about June 5, 1998, Mr. Rule injured his back while working as an Assembler. As a result of his injury, Mr. Rule took a medical leave of absence. On August 6, 1998, Mr. Rule underwent an MRI scan which revealed that he had a herniated disc at L5-S1, with no impingement on the thecal sac (a thin walled tube filled with cerebrospinal fluid that surrounds the spinal cord). On or about September 10, 1998, Mr. Rule filed a claim for worker's compensation. As part of that claim, Mr. Rule asserted that he had suffered permanent injuries as a result of his work-related injury. (D.E. 15, Exhibit A, at 224.) On October 1, 1998, Dr. Augusto Chavez[2] performed a functional capacity evaluation of Mr. Rule and stated in his report that "[p]resently, client has demonstrated the ability to lift 40 lb. on an occasional basis. Activities of overhead reaching, squatting, stair climbing, bending, kneeling, and ½ kneeling are

---

[1]As a technical matter, under the CBA, full-time Assemblers may be treated as having a higher seniority than Janitors in some circumstances, and the seniority status assigned to part-time Assemblers and full-time Assemblers is related to the fact that part-time Assemblers are classified as "20% employees" while full-time Assemblers are deemed "80% employees." (D.E. 20 at 4-5.) These nuances are not material to the present case.

[2]Dr. Chavez is a neurosurgeon at the HealthSouth Rehabilitation Center of Oak Lawn. (D.E. 20, Exhibit A, ¶ 15; D.E. 15, Exhibit 28 to Exhibit A, 1.) Plaintiff describes Dr. Chavez as one of "a number of doctors" Plaintiff saw while on leave, (D.E. 20, Exhibit A, ¶ 15), but neither party discusses whether Plaintiff saw Dr. Chavez at the direction of Jewel or on his own initiative.

all limited to an occasional basis only. Standing/walking is limited to 30 minute durations."
(D.E. 15, Exhibit 28 to Exhibit A, 2.) On November 2, 1998, Cheryl Nolan, apparently a Jewel employee, sent an email to "D. Frasco," also apparently a Jewel employee, which summarizes the restrictions identified by Dr. Chavez and states that Ms. Nolan told a representative of Kemper, Jewel's worker's compensation insurance carrier, "that there was no way these restrictions could be accommodated in an Assembler or any other permanent position and that Kemper should look for other alternatives or work to get these restrictions lifted." (D.E. 20, Exhibit J.) That same day, this email was forwarded to Joe Hermann, Mr. Rule's supervisor. Plaintiff notes that Dr. Chavez did "not state these restrictions were permanent." (D.E. 19 at 3.)

On January 6, 1999, Mr. Rule's own treating physician, Dr. Prakash G. Sane, examined Mr. Rule and concluded that his only restrictions were that he should not lift over sixty pounds or work more than a standard five day work week at a rate of eight hours per day. (D.E. 20 at 10.) On February 17, 1999, an independent medical examiner of the Center for Sports Orthopedics, Dr. Theodore J. Suchy, conducted a medical examination of Mr. Rule and sent Jewel's worker's compensation carrier a report that states, "[o]n my examination, I found no objective findings, other than his morbid obesity [Mr. Rule weighs 330 pounds at 6'6"], that could be a contributing factor to his subjective complaints of low back and right buttock pain." (D.E. 15, Exhibit 26 to Exhibit A, D0033.) The report further states that "[i]t is reasonable, with this patient's stature, that he will have chronic mechanical low back dysfunction and should be restricted from lifting more than 40 pounds on a more than occasional basis. . . .[U]nless the patient has a significant change in body habitus, I think back dysfunction is something that will plague him for the rest of

his life."[3] (*Id.*)  On September 2, 1999, the Illinois Industrial Commission approved a settlement agreement between Jewel and Mr. Rule resolving Mr. Rule's worker's compensation claim.  The "nature of the injury" section of the settlement contract—which was signed by Mr. Rule (D.E. 15, Exhibit 27 to Exhibit A, at 2)—states that Mr. Rule had a "permanent 40 pound lifting restriction."[4] (*Id.*, Exhibit 27 to Exhibit A, at 1.)

Mr. Rule received Total Temporary Disability worker's compensation benefits ("TTD benefits"), which are 66 2/3% of his average gross weekly wage, until such benefits were terminated on January 29, 1999.  (D.E. 22 at 25.)  Jewel claims that from 1998 to 1999 it had a uniform policy that if an employee was off work continuously for more than fifty-two weeks, the employee would be subject to termination.  (D.E. 20 at 12.)  Mr. Rule contends that termination is allowed under the relevant terms of the CBA only if an employee "fails to report to work due to a proven non-worker compensation illness or injury of the employee for a period of twelve (12) consecutive months," (D.E. 20, Exhibit 1 to Exhibit A, D0016), and so the policy should not have applied to him.  (D.E. 20 at 12.)  Regardless of whether Jewel's policy of terminating employees off work continuously for more than fifty-two weeks was consistent with the CBA, the existence of this policy and the discontinuation of Mr. Rule's TTD benefits exerted pressure on him to return to work.[5] (D.E. 19 at 2-3.)

---

[3]Anthony Bowden, a labor relations manager for Jewel, reviewed Mr. Rule's medical file, (D.E. 20, Exhibit G, 124-25), and the issue of whether relevant decision makers had knowledge of the medical reports concerning Mr. Rule's condition has not been disputed by Jewel.

[4]In his affidavit filed in this litigation, Mr. Rule now contends, by contrast, that "[n]one of my restrictions were permanent." (D.E. 20, Exhibit A, ¶ 18.)

[5]Plaintiff contends in his brief in opposition to Defendant's motion for summary judgment ("opposition brief") that "Jewel began pressuring Rule to return to work again, saying

Because he could not perform the Assembler position with the lifting restriction (as stated

in the workers compensation settlement agreement and as diagnosed by all of the doctors who

had seen him), Mr. Rule, while on medical leave, telephoned Mr. Hermann several times to

discuss his desire to bid on another job position. Mr. Rule desired a position which he would be

able to perform with his lifting restriction (which was indefinite in duration) and which would

help him avoid future injuries to his back.[6]  Mr. Rule also contacted Union Trustee and Business

Agent Lloyd Caldwell on several occasions about bidding on a job position within his medical

restrictions. Mr. Rule wanted a Janitor position—his most desired position at the Warehouse.

However, Mr. Rule's seniority as an Assembler with a hire date of September 26, 1994 was not

sufficient to enable him to win any of the available Janitor positions by competitive bid.  In this

regard, it appears that Mr. Rule's co-workers agree that the Janitor positions are the most

desirable, as any such positions had gone to coworkers with more seniority as determined under

the CBA.  (D.E. 20 at 11-12.)

---

that he would be terminated if he were off for a year." (D.E. 19 at 2.)  Although Mr. Rule does
not identify any evidence supporting the fact the Jewel told him he would be terminated if he
were off for a year, Jewel has admitted elsewhere that it had a policy that if an employee was off
work continuously for more than fifty-two weeks, the employee would be subject to termination,
(D.E. 20 at 12), evidence in the record suggests that Mr. Rule knew of this policy, (D.E. 15,
Exhibit 37 to Exhibit A, 1), and it is logical to infer that he consequently felt pressure to return to
work, especially once his TTD benefits ended.

     [6]  In his opposition brief, Mr. Rule states that "he was not able to work . . . at other jobs at
the Warehouse, such as Replenisher, Loader or General Laborer." (D.E. 19 at 11.)  However, the
only record material he cites to that even contain the words "Replenisher," "Loader" or "General
Laborer" are pages in the CBA that indicate that these positions exist but do not state whether
they require lifting more than 40 pounds or mention Mr. Rule or his ability to perform these jobs.
Because this assertion is not properly supported under Local Rule 56, the Court considers Mr.
Rule to have waived the issue. *See, e.g., Brasic v. Heinenmann's Inc.*, 121 F.3d 281, 284 (7th
Cir. 1997); *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000).

In April 1999, Jewel decided to create a job opening for a Trailer Sanitor position. (D.E. 20 at 13.) Accordingly, on April 30, 1999, Jewel posted a job opening for a permanent Trailer Sanitor position. On or about April 30, 1999, Mr. Rule spoke to Mr. Hermann. (*Id.*) Jewel contends that Mr. Rule asked Mr. Hermann to add Mr. Rule's name to the bid sheet for the open Trailer Sanitor position. Jewel further contends that Mr. Hermann confirmed that Mr. Rule understood that by accepting the position of Trailer Sanitor, he would be paid less than he had been as an Assembler and would be treated for seniority purposes as a Trailer Sanitor. Mr. Hermann testified that he placed Mr. Rule's name (and his own initials) on the bid sheet for the Trailer Sanitor position pursuant to a request Mr. Rule made in a telephone call.[7] (D.E. 20, Exhibit E, 98.) Jewel also asserts that previously, during Mr. Rule's medical leave, Mr. Rule asked Mr. Hermann to place Mr. Rule's name on bid sheets for open Janitor positions and that Mr. Hermann did so, although Mr. Rule did not win the bids for the Janitor jobs. (D.E. 20 at 11-12.)

Mr. Rule maintains that he never asked Mr. Hermann to sign any bid sheets for him, either for Janitor or Trailer Sanitor positions. Mr. Rule further states it is customary that the

---

[7] Mr. Bowden testified in his deposition that Mr. Hermann told him that Mr. Rule "called and bid on the position." (D.E. 20, Exhibit G, 147-48.) In response to a request to admit in proceedings before the Illinois Human Rights Commission concerning Plaintiff's charge of discrimination, Jewel stated that "the fact that Complainant bid on that posting orally means that there never was a copy of the posting *containing Complainant's signature.*" (D.E. 20, Exhibit G, 1) (emphasis added). Although Jewel typically kept bid sheets for some period of time, (*id.* at 99), Jewel has not produced any copy of the bid for the Trailer Sanitor position posted on April 30, 1999 (D.E. 22 at 13), which apparently was first requested some 18 months after the events in question. (D.E. 22 ¶148 (citing Bowden Dep. at 166); *see also* Bowden Dep. (D.E. 20, Exhibit G, at 164-66.) Mr. Hermann testified that he has not seen the bid sheet since he signed it. (D.E. 20, Exhibit E, 102.)

memos posted showing job openings include "language requiring the signature, on the attached bid sign-up sheet, of the employee bidding on the job." (D.E. 22 at 4.) According to Mr. Rule, "[i]t is not proper procedure for a supervisor to sign a bid for an employee. Only the employee himself, or a union representative on his behalf, can sign a bid."[8] (*Id.* at 6.) In a sworn affidavit Mr. Rule submitted to the National Labor Relations Board on January 29, 2001, in support of a charge he filed against Jewel claiming he was forced into the Trailer Sanitor position in retaliation for his union activities, Mr. Rule stated "I believe that Joe Herman mistakenly signed me up for a sanitor job permanent when I asked him to sign me up as a janitor (and not a sanitor)." (D.E. 15, Exhibit 37 to Exhibit A, D0057.)

At the same time Mr. Rule was on medical leave, another employee who had been hired as an Assembler, James Novello, was also on medical leave due to a work-related injury. It is undisputed that Mr. Novello did not bid on the Trailer Sanitor job and never authorized anyone to bid on his behalf. (D.E. 22 at 17-19.) It is also undisputed that Mr. Novello is Caucasian. (D.E. 27-28.) Joe Masciopinto, Jewel's Superintendent of Transportation at the Warehouse Complex, placed Mr. Rule and Mr. Novello into Trailer Sanitor positions in May 1999. (D.E. 20 at 15-16.)

Mr. Rule and Mr. Novello both returned to work in May 1999 and performed Trailer Sanitor duties.[9] (*Id.* at 17-18, 28.) Mr. Rule and Mr. Novello both claim that, at first, they

---

[8] Although the parties dispute whether a supervisor may appropriately sign a bid sheet on behalf of an employee, they agree that "oral bids" are not permitted in the sense that an employee's name must be placed on a bid sheet if the employee is to be properly awarded the job. (D.E. 22 at 7.)

[9] On May 7, 1999, Mr. Masciopinto sent an email to Mr. Bowden stating that "Emmit Rule is the bid winner of the Sanitor's job that is effective 5/10/99" and that "James Novello has

thought that were working as Trailer Sanitors on "modified duty" assignments (rather than actually being considered Trailer Sanitors for all purposes, including bidding rights). (*Id.* at 17, 27-28.) A September 1, 1998, Letter of Understanding ("LOU") between Jewel and CTDU distinguishes between employees who are placed in the Trailer Sanitor position temporarily as a "modified duty" assignment and those who are hired as Trailer Sanitors or bid into the position. The LOU also provides that employees who are temporarily assigned "on modified duty" to work as Trailer Sanitors are to be returned to their original work location once they receive a full medical release. (*Id.* at 6-7.) Section 5.3 of the CBA states that employees performing temporary modified duty work "shall not have [their] pay rate reduced for such unless the job change is on a permanent basis and the employee[s] [are] so notified." (*Id.* at 7.) Upon their return, Mr. Rule and Mr. Novello were paid at the Trailer Sanitor rate (which is less than the rate paid to Assemblers). (*Id.* at 17, 27-28.)

Mr. Rule states that he at first believed he was being placed in the Trailer Sanitor position only temporarily, while maintaining his Assembler rate of pay and bidding seniority, in part, because he knew that another Assembler, Russell Allen, was accommodated in such a fashion ten years earlier. (D.E. 20, Exhibit A, ¶ 28.) On January 27, 1988, Mr. Allen, a Caucasian Jewel

---

been informed that he is to report to work on 5/17/99." (D.E. 20, Exhibit 20 to Exhibit G, 1.) On his copy of the email, Mr. Bowden wrote "Shari Liszka – informed Joe Masciopinto it was ok to return them to work. It would reduce our exposure." (*Id.*) In his opposition brief, Mr. Rule states "[i]t is unclear what arguable reason Jewel could have for wanting to force Rule into the job of Sanitor permanently other than reducing its exposure under worker's compensation." (D.E. 19 at 12.) Jewel employees Bennie Trent and Lonnie Abraham also incurred work related injuries prior to being placed in their Sanitor positions. (D.E. 22 at 24.) Plaintiff does not identify the race of Mr. Trent or Mr. Abraham. Defendant asserts that Mr. Trent and Mr. Abraham are Caucasion, but does not cite any evidence on this point. (D.E. 22 at 24.) Accordingly, the Court considers the Trent/Abraham issue waived as presented.

employee, was injured at work. He was temporarily assigned to perform the duties of a Trailer

Sanitor (though the CBA in effect at the time did not recognize a distinct Trailer Sanitor position

(D.E. 20 at 26-27))[10] in 1989 during the period in which he was expected to recuperate from his

temporary incapacity. (*Id.* at 26.) While performing the duties of a Trailer Sanitor, Mr. Allen

retained his seniority as an Assembler. In September 1991, he successfully bid on a Janitor

position. (*Id.* at 26-27.) Mr. Herman, Mr. Bowden, and Mr. Masciopinto did not have anything

to do with Mr. Allen's placement. (*Id.* at 27.)

Although Jewel asserts that Mr. Rule knew he was "permanently" assigned to the job of

Trailer Sanitor at the time he was placed in that position in May 1999, Mr. Rule contends that he

did not know that this assignment was permanent until on or about July 27, 2000.[11] (D.E. 22 at

---

[10] Paragraph 108 of Defendant's 56.1 Statement of Facts states "[t]he CBA in effect from April 1, 1988 to March 31, 2001, did not recognize a distinct Trailer Sanitor position. In addition, the job bidding and seniority provisions of the collective bargaining agreement in effect in 1989 were also substantially different from the provisions in effect in May 1999. (Bowden Aff. ¶ 40.)" (D.E. 20 at 26-27.) Plaintiff responded to this paragraph as follows: "Denied. The CBA for the period from April 1, 1988 to March 31, 1991 (not 2001) (Def.'s Exh. I) was produced and Article 8 of both this Agreement and the CBA for April 1, 1998 to March 31, 2003 are substantially similar. Admitted that Trailer Sanitors are not mentioned in the earlier agreement." (*Id.* at 27.) Inasmuch as Plaintiff has expressly admitted that Trailer Sanitors are not even mentioned in the earlier CBA, it follows that Plaintiff has also admitted the lesser proposition that the earlier CBA did not recognize a distinct Trailer Sanitor position. Furthermore, the seniority provisions (Article 8 of both agreements) of the earlier and later CBAs are significantly different in that, among other things, the CBA in effect during Plaintiff's employment not only includes "Sanitors" as an operational grouping but specifically defines the relative bidding priority among "trailer sanitor[s]" and other employees (D.E. 20, Exhibit 1 to Exhibit A, D0017)), while the CBA in effect in 1989 does not include "Sanitors" as an operational grouping or, as noted above, even mention the term, let alone specifically assign them a level of bidding priority. (D.E. 15, Exhibit I, D0415.)

[11] The Court is not including facts cited by the parties related only to their dispute about whether Mr. Rule knew of his permanent assignment prior to July 27, 2000, because such facts were not material to the Court's decision.

15.) On that date, Mr. Rule received a full medical release from his treating physician Dr. Sane. Mr. Rule asserts that it was his understanding at this time that once he received a release to full duty, he would be returned to his original position of full-time Assembler. Mr. Rule gave his release to Mr. Hermann on July 27, 2000, but was told by Mr. Hermann that he was no longer an Assembler, but instead was a Trailer Sanitor. (D.E. 20, Exhibit A, ¶¶ 35-36.)

On or about August 7, 2000, the Warehouse Complex posted an open Janitor position. Mr. Rule bid on that position but lost the bid. That position was initially awarded on August 20, 2000, to Mike DeFelice, the most senior employee who had signed the bid sheet and a Caucasian. (D.E. 20 at 21-22.) Joe Davis, a more senior employee and an African American, returned from vacation on September 13, 2000, and exercised his right under the CBA to claim the Janitor position from Mr. DeFelice. Jewel then removed Mr. DeFelice from the Janitor position and returned him to his prior position of Assembler. (D.E. 20 at 21). Mr. Davis later revoked his bid and returned to the Assembler job, with Mr. DeFelice then receiving the Janitor position once again. (D.E. 20, Exhibit A, ¶ 39.)

Under the CBA seniority rules, if Mr. Rule had not been classified as a Trailer Sanitor, he would have initially won the bid for the August 7, 2000 Janitor position because Mr. Rule has an earlier date of hire than Mr. DeFelice.[12] However, Mr. Davis still could have displaced Mr. Rule

_____

[12] In his opposition brief, Plaintiff repeatedly implies that Mr. DeFelice ranked beneath Mr. Rule for CBA seniority purposes. *See, e.g.*, D.E. 18 at 5 (discussing "[a]n employee named Mike DeFelice, who is white and less senior than Rule . . . ."). These references are at best incomplete and at worse misleading. Mr. DeFelice does not rank below Mr. Rule within the meaning of the CBA bidding/seniority priority unless Mr. Rule is allowed to bid as an Assembler and not as a Trailer Sanitor, his present position (or at least the position he has been performing since May 1999). Mr. Rule advanced this complaint in a job grievance, and both union representatives on the Joint Grievance Committee rejected Mr. Rule's contentions. (D.E. 20 at

because Mr. Davis has an earlier hire date. Of course, if Mr. Davis decided not to displace Mr. Rule (or to take the job and then give it back as he did with Mr. DeFelice) then Mr. Rule would have been entitled to the Janitor job. (D.E. 22 at 16-17.)

On August 22, 2000, and September 12, 2000, Mr. Rule filed grievances claiming that he should have been awarded the Janitor position. In his grievances, Mr. Rule contended that because he received a full release on July 27, 2000, he should have been returned to the position of Assembler with Assembler bidding rights. (D.E. 20 at 22.) In accordance with the CBA's grievance procedures, Jewel and the CTDU held a Joint Grievance Committee hearing on September 29, 2000 to consider Mr. Rule's grievances. The Joint Grievance Committee is comprised of two management representatives and two union representatives. After presentation of the evidence, the Joint Grievance Committee ruled that Mr. Rule should provide "[a] detailed medical narrative of any and all treatments to include office visits, therapies and medication prescribed since June 5, 1998."[13] (*Id.* at 22-23.) The Joint Grievance Committee reconvened on October 27, 2000. After considering the medical documentation provided by Mr. Rule and other evidence, the JGC ruled that Mr. Rule "has no medical restrictions, that he bid on the Sanitor job in 1999 and, therefore, if he wants to get off the Sanitor job, he must bid off of the job as

---

23.)

[13] In his opposition brief, Mr. Rule states that the Joint Grievance Committee's request for additional medical documentation was "influenced by Bowden." (D.E. 19 at 5.) However, in support of this assertion, Mr. Rule cites only to a portion of Mr. Bowden's deposition in which he states that upon seeing Dr. Sane's release of Mr. Rule, he felt he "would need to see records that would support or substantiate his chiropractic treatment, his physical therapy, and the extended exercise program." (D.E. 20, Exhibit G, 141.) Mr. Bowden did not mention the Joint Grievance Committee.

provided for in the Collective Bargaining Agreement."[14] (D.E. 20 at 23.) Both union representatives voted against Mr. Rule in the grievance. (*Id.* at 23.)

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Once the moving party satisfies this burden, the nonmovant must set forth specific facts showing that there is a genuine material issue for trial. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## DISCUSSION

Plaintiff asserts that Defendant violated Title VII, Section 1981, and the ADA by placing him in the Trailer Sanitor position, with the relatively lower pay and bidding rights that accompany that position (as compared with his former position of Assembler), because of his race, disability, or at least perceived disability by Jewel. Defendant has moved for summary

---

[14]The "Notice of Substantial Evidence and Notice of Dismissal" prepared by the Illinois Department of Human Rights regarding Mr. Rule's charge contains the statement "Respondent does not agree Complainant is fully recovered from his lumbar problems." (D.E. 20, Exhibit 24 to Exhibit A, D0070.)

judgment on multiple bases. As explained below, the Court grants Defendant's motion on the grounds that (1) Plaintiff has not created a triable issue regarding whether Defendant was impermissibly motivated by race, (2) Plaintiff has not shown that he is disabled for purposes of the ADA, and (3) Plaintiff has not created a triable issue concerning whether Defendant regarded him as disabled within the meaning of the ADA.

A.      Title VII and Section 1981

"Since Section 1981 claims are evaluated under the same rubric as Title VII claims, [the Court] will not address them separately." *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1028 (7th Cir. 2004). Two methods of proving employment discrimination are available to plaintiffs asserting Title VII and Section 1981 claims, the "direct method" and the "indirect method." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). "Under the direct method of proof, a plaintiff may show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose, such as race . . . ." *Id.* at 1061. The Seventh Circuit has instructed that "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Id.* (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).[15] Alternatively, "[a] plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Rogers*, 320 F.3d at 753).

---

[15] The Seventh Circuit has explained that evidence of this sort is exemplified by statements such as "'I fired you because of your age.'" *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

14

However, such circumstantial evidence, "'must point directly to a discriminatory reason for the employer's action.'" *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)); *see generally Castleman v. ACME Boot Co.*, 959 F.2d 1417, 1422 (7th Cir. 1992) (teaching that direct evidence will "rarely" be found).

"If a plaintiff cannot prevail under the direct method of proof, he must proceed under the indirect method . . . ." *Cerutti*, 349 F.3d at 1061. The indirect method "requires the plaintiff to establish four things, that: 1) he belongs to a protected class; 2) his performance met his employer's legitimate expectations; 3) he suffered an adverse employment action; 4) similarly situated others not in his protected class received more favorable treatment." *Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 744 (7th Cir. 2002). If the plaintiff makes this *prima facie* showing, the defendant must then produce a legitimate nondiscriminatory reason for its decision. *See Cerutti*, 349 F.3d at 1061. Should the defendant offer such a legitimate nondiscriminatory explanation, the plaintiff must present evidence "'that the employer's proffered explanation is pretextual [i.e., a lie].'" *Id.* (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002)). However, "[t]he plaintiff must meet each prong of the prima facie test before it becomes necessary to reach the issue of pretext." *Brummett*, 284 F.3d at 745.

The Court respectfully holds that Plaintiff is unable to avoid summary judgment under either method.

### 1. The Direct Method

Plaintiff appears to be primarily attempting to proceed under the indirect method. However, in his opposition brief, Plaintiff makes one brief reference to the direct method. (D.E. 19 at 9.) The following paragraph constitutes the entirety of Plaintiff's argument with respect to

15

his ability to proceed under the direct method:

> In *Troupe v. May Department Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) the Court held that all the facts taken together can create a mosaic of discrimination which reasonably infers that the adverse action was taken because the plaintiff was a member of a protected class. This is all that is required to defeat a motion for summary judgment. In other words, there must be evidence from which the trier of fact could infer that the reason given by the employer was pretextual. *Senner v. North Central Technical College*, 113 F.3d 750, 755 (7th Cir. 1997).

(D.E. 19 at 9.) Thus, Plaintiff appears to be arguing that if he can raise an issue of fact regarding whether Defendant's reason for permanently placing him into the Trailer Sanitor position is pretextual (*e.g.*, whether Plaintiff disagrees with Mr. Herman concerning whether Plaintiff told Mr. Hermann to bid on the Trailer Sanitor position for Plaintiff), he has provided sufficient direct evidence of discrimination to avoid summary judgment. The Court respectfully disagrees.

As suggested above, caselaw makes clear that Plaintiff cannot bypass the requirement that he first meet the elements of the *prima facie* case before he relies on evidence of pretext as his basis for avoiding summary judgment. *See Brummett*, 284 F.3d at 745 ("[t]he plaintiff must meet each prong of the prima facie test before it becomes necessary to reach the issue of pretext."); *accord, e.g., Cerutti*, 349 F.3d at 1061 ("A plaintiff does not reach the pretext stage, however, unless he first establishes a prima facie case of discrimination under the indirect method."); *Peele*, 288 F.3d at 327 ("If a plaintiff is unable to establish a *prima facie* case of employment discrimination under *McDonnell Douglas*, an employer may not be subjected to a pretext inquiry.") *Brummett* is particularly instructive in this regard. In *Brummett*, the employer fired the plaintiff and cited as reasons "Brummett's lack of a driver's license and his failure to report his D.U.I. arrest." *Brummett*, 284 F.3d at 745. Brummett claimed that because he raised a factual dispute as to whether he actually did report the arrest to his employer, he should survive

16

summary judgment because of the disputed issue concerning pretext. *Id.* The Seventh Circuit

held that Brummett's attempted approach was improper because it "puts the pretext cart before

the prima facie horse." *Id.* The Court held that because Brummett could not meet the elements

of the *prima facie* case, he could not save his claim by raising a disputed fact regarding pretext.

*Id.* at 744-45. As explained below, Mr. Rule also cannot meet the required *prima facie* elements.

Therefore, under Brummett, Mr. Rule cannot avoid summary judgment simply by pointing to a

disputed factual issue concerning whether Mr. Rule told Mr. Hermann to bid on the Trailer

Sanitor position on Mr. Rule's behalf. *See Brummett,* 284 F.3d at 744 ("The plaintiff must meet

each prong of the prima facie test before it becomes necessary to reach the issue of pretext")

(citing *Coco v. Elmwood Care, Inc.,* 128 F.3d 1117, 1179 (7th Cir. 1997));[16] *accord, e.g., Robin*

*v. Espo Engineering Corp.,* 200 F.3d 1081, 1092 (7th Cir. 2000) (holding that "[f]or us to

consider Robin's evidence of pretext, he has to establish a prima facie case of discrimination,

which he has failed to do" where plaintiff claimed he demonstrated a mosaic of evidence of

discrimination).[17]

---

[16] *Brummett* also discussed a potential exception, which "in limited circumstances" can obviate the need for a plaintiff to make a full *prima facie* showing before pretext is analyzed. *Id.,* 284 F.3d at 745. That limited exception is potentially applicable where an employee is terminated but contends that bad performance reviews offered in support of his or her termination are a "sham" designed to hide racial discrimination or where the employer allegedly created job criteria as a sham for the same purpose. *Id.* This exception is not triggered here, as Mr. Rule does not complain of "sham" performance reviews or dispute the idea that someone who seeks to work as an Assembler must be able to lift heavy loads. (D.E. 20 at 3; D.E. 15, Exhibit A, at 221-22.)

[17] *Senner v. Northcentral Technical College,* 113 F.3d 750 (7th Cir. 1997) is not to the contrary. In *Senner,* the Court prefaced its discussion of pretext by first explicitly stating that it was assuming that the plaintiff had established a *prima facie* case of discrimination. *Senner,* 113 F.3d at 755 ("Assuming, for the purposes of this appeal, that Senner has established a *prima facie* case of discrimination, the burden of production shifts to NTC to rebut the presumption of

The Court is not holding that evidence of pretext could never be part of a mosaic of circumstantial evidence sufficient to create a triable issue regarding discrimination. *See generally Robin* 200 F.3d at 1089 (discussing "mosaic" analysis but stating that "we continue to recognize that the burden shifting framework provides a 'useful organizational structure under which the parties and the . . . court can assess the need for a full trial.'" (quoting *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169 (7th Cir. 1998)). However, in this case, no such mosaic has been established. As noted above, Plaintiff has not even attempted to identify an array of bits and pieces of evidence it contends constitutes a mosaic but instead merely makes a general reference to its ability to show pretext. More importantly, assuming, as the Court must, that Mr. Rule did not tell Mr. Hermann to bid on the Trailer Sanitor job and that Jewel nonetheless unilaterally placed him in that position, this fact does not raise an inference that discriminatory animus motivated Jewel's actions within the factual record of this case because it is undisputed that Jewel simultaneously did the exact same thing to Mr. Novello, who is Caucasian. *See Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1164 (7th Cir. 1994) ("Weymon's behavior demonstrated no racial animus. He did not mistreat only whites; he mistreated everyone."); *see also Robin*, 200 F.3d at 1092 n.5 (rejecting "pretext"/mosaic argument based on record in case). Indeed, Plaintiff's counsel almost concedes as much by stating that "[i]t is unclear what arguable reason Jewel could have for wanting to force Rule into the job of Sanitor permanently other than reducing its exposure under worker's compensation." (D.E. 19 at 12.)[18] Precedent teaches that

discrimination by articulating a legitimate, non-discriminatory reason for its actions.").

[18]Although Plaintiff has not argued that a piece of the supposed mosaic of circumstantial evidence is the fact that, ten years before Plaintiff was permanently placed in the Trailer Sanitor position, Mr. Allen was temporarily allowed to perform Trailer Sanitor duties while maintaining

such a showing is inadequate for Plaintiff to prevail. *See, e.g., Cianci v. Pettibone Corp.*, 152

F.3d 723, 727 (7th Cir. 1998) (stating that plaintiff's termination may have been unfair, but

rejecting claim because "'Title VII does not prohibit unfairness or wrongheaded decisions in the

workplace.'") (quoting *Johnson v. Hondo, Inc.*, 125 F.3d 408, 415 (7th Cir. 1997)). Hence,

because Plaintiff has not established a mosaic of circumstantial evidence sufficient to raise the

inference that Defendant acted with a *racially discriminatory* animus when it placed Plaintiff in

the Trailer Sanitor position, Plaintiff cannot prevail under the direct method of proof. *See*

*generally Robin* 200 F.3d at 1092 & n.5 (finding summary judgment appropriate under

*McDonnell Douglas* analysis but continuing to state that even if pretext evidence were

considered more generally, the evidence failed to create "a convincing mosaic of [direct proof of

age] discrimination," even where, two years before plaintiff was fired, defendant said plaintiff

was "getting too old" and was an "old S.O.B.").

  2.  The Indirect Method

  As mentioned above, Plaintiff is unable to succeed under the indirect method because he

cannot establish a *prima facie* case of racial discrimination. Plaintiff cannot establish a *prima*

*facie* case because he has not presented evidence that a similarly situated employee outside of his

protected group was treated more favorably. The employee Plaintiff identified in an attempt to

meet this element, Mr. Allen, was not similarly situated to Plaintiff.

---

his Assembler bidding seniority, the Court notes that this fact cannot be used to create a triable
issue of fact because, among other reasons, it is undisputed that Mr. Hermann, Mr. Masciopinto,
and Mr. Bowden, the decision makers with regard to Mr. Rule's placement in the Trailer Sanitor
position, were not involved in the decision to place Mr. Allen many years earlier. *See, e.g.,*
*Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir. 1998) (holding that discriminatory
comments by nondecision-maker did not create an inference of discrimination).

"To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). "In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). "Such factors include whether the employees 'dealt with the same supervisor' and were 'subject to the same standards.'" *Patterson* 281 F.3d at 680 (quoting *Radue*, 219 F.3d at 617-18). In addition, employees are not similarly situated if they are subject to "differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 618.

One reason why Mr. Rule and Mr. Allen are not similarly situated is that they did not have the same supervisors. Precedent teaches that "[d]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Radue*, 219 F.3d at 618; *accord, e.g., id.* ("'[W]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects.'") (quoting *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 910 (8th Cir. 1999)); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003); *Snipes v. Illinois Dep't of Correction*, 291 F.3d 460, 463 (7th Cir. 2002). In addition, as Plaintiff admits, his lifting restriction was "indefinite" while Mr. Allen's incapacity was known to be temporary and Mr. Allen was expected to recuperate. (D.E. 20 at 11, 26.) Moreover, when Mr. Allen was asked to temporarily perform trailer sanitation duties in 1988, the Trailer Sanitor position was not

20

a separately defined position under the CBA then in effect. (D.E. 15, Exhibit I; D.E. 20 at 26-27.) These distinctions are material and significant, and as a result, Plaintiff has not met his burden of demonstrating that he and Mr. Allen were "directly comparable . . . in all material respects." *Patterson*, 281 F.3d at 680; *accord, e.g., Spath v. Hayes Wheels Int'l*, 211 F.3d 392, 397 (7th Cir. 2000); *Radue*, 219 F.3d at 617-18. Therefore, Plaintiff cannot establish a *prima facie* case of discrimination. Because Plaintiff cannot create a triable issue regarding racial discrimination under either the direct or indirect method, Defendant's motion for summary judgment is granted as to Plaintiff's claims under Title VII and Section 1981. *See, e.g., Williams*, 361 F.3d at 1028.

B.     The ADA Claims

"To invoke protection under the Americans with Disabilities Act . . . [a plaintiff] must show that she suffers from a disability as defined in the Act." *Skorup v. Modern Door Corp.*, 153 F.3d 512, 514 (7th Cir. 1998). Under the ADA, "disability" is defined in three ways:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
(B) a record of such impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff claims that he qualifies as disabled in two ways. Plaintiff claims that he is disabled within the meaning of subsection (A) because his back condition substantially limits major life activities. He contends that meets the requirements of subsection (C) because Jewel regarded him as disabled.

1.     Plaintiff's Claimed Actual Disability (Subsection (A))

Plaintiff contends that he is disabled within the meaning of the ADA because his back

condition is an impairment which substantially limits his major life activities of walking and working inasmuch as he was limited to walking thirty minutes at a time and he had a forty pound lifting restriction with respect to work. (D.E. 19 at 3, 11.) Precedent does not support this claim.

a. Walking

Although walking is a recognized major life activity, *see Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 951 (7th Cir. 2000), the restrictions that were placed on Plaintiff's ability to walk do not qualify him as disabled within the meaning of the ADA for two independent reasons. First, caselaw teaches that a limitation to walking for periods of thirty minutes at a time is not a sufficiently substantial limitation as to constitute a disability under the ADA. *See, e.g., Moore*, 221 F.3d at 951 (holding plaintiff was not substantially limited where he could walk a mile); *Kelly v. Drexel University*, 94 F.3d 102, 106 (3d Cir. 1996) (holding that plaintiff was not substantially limited where he could not walk more than a mile); *Ratliff v. City of Chicago*, No. 99-6986, 2002 WL 2022188, at *5 (N.D. Ill. Aug. 29, 2002) (holding plaintiff was not substantially limited where she could walk for 30 minutes a day); *Bertinetti v. Joy Mining Machinery*, 231 F. Supp. 2d 828, 834 (S.D. Ill. 2002) (holding plaintiff was not substantially limited where he could not walk more than 100 yards without resting) (collecting cases).

Second, Plaintiff's "ability to walk" claim fails for the alternative and independent reason that insofar as Plaintiff was injured on June 5, 1999 and his own treating physician reported on January 6, 1999 that Plaintiff had no restrictions (other than that he should not lift over sixty pounds or work more than a standard five day work week at a rate of eight hours per day), Plaintiff's ability to walk was impaired for only seven months at most. For an impairment to qualify as substantially limiting under the ADA, "[t]he impairment's impact must also be

permanent or long term." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S.

184, 198 (2002); *see Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999) ("Disability

does not include temporary medical conditions."). Precedent teaches that seven months does not

qualify as permanent or long term for the purposes of the ADA. *See Pollard v. High's of*

*Baltimore, Inc.*, 281 F.3d 462, 469 (4th Cir. 2002) (holding that nine month impairment was not

long-term or permanent for purposes of the ADA); *Colwell v. Suffolk County Police Department*,

158 F.3d 635, 646 (2d Cir. 1998) (holding seven-month impairment of too short a duration to be

"substantially limiting"); *Lester v. Trans World Airlines, Inc.*, No. 95-2349, 1997 WL 417814, *6

(N.D. Ill. July 23, 1997) (collecting cases and holding that condition requiring nine months of

drug therapy "was too temporary a condition to be considered a disability under the ADA").

Therefore, the impairment of Plaintiff's ability to walk does not qualify him as disabled.

### b. Working

In relation to "the major life activity of working, 'substantially limits' means the

individual is significantly restricted in the ability to perform a class of jobs or a broad range of

jobs in various classes." *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001). Thus,

Plaintiff "has the burden of presenting evidence to demonstrate that his impairment limited his

ability to perform an entire class of jobs." Id. Plaintiff has not met this burden.

Plaintiff has identified only one limitation resulting from his back condition that inhibited

his ability to work—the forty pound lifting restriction.[19] A substantial body of authority has held

---

[19] As set forth above, the initial limitations on overhead reaching, squatting, stair
climbing, bending, kneeling, and ½ kneeling to an occasional basis and to standing for thirty
minutes at a time were lifted by Plaintiff's treating physician well before he returned to work
(and so, like the limitations on Plaintiff's ability to walk, were of too short a duration to qualify

that such a constraint does not "constitute a significant restriction on one's capacity to work, as the term is understood within the ADA." *Contreras*, 237 F.3d at 763 (holding that a forty-five pound lifting restriction and the inability to engage in strenuous work or drive a forklift more than four hours a day did not substantially limit ability to work); *see, e.g., Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir. 2001) ("This court has repeatedly held that the type of work restriction at issue in this case [30 pound lifting restriction] does not amount to a 'disability' within the meaning of the ADA."); *Thompson v. Holy Family Hospital*, 121 F.3d 537, 540-41 (9th Cir. 1997) (holding that inability to lift 25 pounds on a continuous basis did not substantially limit ability to work); *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 911-12 (N.D. Ill. 2002) ("Plaintiff's [40 pound] lifting restrictions clearly do not qualify as a substantial limitation on working."). Indeed, with this lifting restriction, Plaintiff performed his Trailer Sanitor duties and does not dispute that he could have functioned with this restriction in the Janitor position, which does not require heavy lifting. (D.E. 19 at 2 (plaintiff explaining that "Rule knew he could perform the Janitor job with his restrictions.")) The only job that Plaintiff has presented evidence that the lifting restriction impaired his ability to perform is Assembler.[20]

Plaintiff as "disabled"). In addition, Plaintiff has not contended that these limitations impaired any of his major life activities so the Court considers such arguments waived in any event. *See, e.g., Jones Motor Co., Inc. v. Holtkamp*, 197 F.3d 1190, 1192 (7th Cir. 1999).

[20] As noted above, while Plaintiff states in his opposition brief that "he was not able to work . . . at other jobs at the Warehouse, such as Replenisher, Loader or General Laborer," (D.E. 19 at 11), he has not supported this assertion with any evidence inasmuch as the only record material he cites that even contains the words "Replenisher," "Loader" or "General Laborer" are pages in the CBA that indicate that these positions exist but do not state whether they require lifting more than 40 pounds or mention Plaintiff or his ability to perform these jobs. That is inadequate. *See* note 6, *supra*. Moreover, even if the Court were to assume that the positions of Replenisher, Loader and General Laborer required lifting more than 40 pounds, Plaintiff still would not have demonstrated that he was significantly restricted in his ability to perform a class

Thus, Plaintiff has not created a triable issue regarding whether he was significantly restricted in his ability to perform a class of jobs—even within the single Jewel warehouse complex where he is employed, much less in some reasonable geographic area surrounding his specific place of employment. *See, e.g., Contreras*, 237 F.3d at 762; *Conant*, 271 F.3d at 785-86; *Rockwell*, 243 F.3d at 1016.

Because Plaintiff has not presented evidence that his back condition substantially limited a major life activity, Defendant's motion for summary judgment is granted as to Plaintiff's claim under subsection (A) of the ADA.

        2.        Plaintiff's "Regarded As" Claim (Subsection (C))

Plaintiff contends that he has shown that Jewel regarded him as disabled within the meaning of the ADA because he has raised an inference that "Jewel knew of Rule's injury and feared that he would suffer further injury on the job." (D.E. 19 at 11.) Even assuming that this is true (and such a generic statement can probably fairly be made after almost any workplace injury), it is not enough. To survive summary judgment, Plaintiff "must have evidence that [Defendant] viewed the [Plaintiff's] condition as a restriction on [his] ability to perform 'a class of jobs or a broad range of jobs in various classes' in the relevant geographic area." *Rockwell*, 243 F.3d at 1016; *see Tockes v. Air-Land Transport Servs., Inc.*, 343 F.3d 895, 896 (7th Cir. 2003) ("Unless the employer mistakenly believes that an employee has a disability grave enough to be so classified under the ADA, the employer's acting on the mistaken belief does not violate

---

of jobs. *See, e.g., EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1018 (7th Cir. 2001) (holding that the employer's perception that the plaintiffs were unable to perform four jobs did not raise an inference that the employer regarded them as disabled).

the statute."). Plaintiff has not met this burden.

It is undisputed that Defendant believes Plaintiff can perform Trailer Sanitor duties (and it must be, since Defendant placed Plaintiff in the Trailer Sanitor position after his back injury). It is also undisputed that Plaintiff's preferred position, the Janitor position, is less strenuous than the Trailer Sanitor job insofar as Janitors are not required to climb over debris in unlit trailers. As Plaintiff describes it, "[t]he Janitor job involves mainly sweeping duties." (D.E. 19 at 2.) And Plaintiff has not presented evidence that Jewel regarded him as disabled with respect to the Janitor position. Thus, Plaintiff has not contended or created a colorable issue concerning whether Defendant regarded Plaintiff as significantly restricted in his ability to perform as a Trailer Sanitor or a Janitor within the single warehouse complex where he is employed. Although Plaintiff may have raised an inference that Defendant regarded Plaintiff as restricted in his ability to perform as an Assembler, this does not suggest that Defendant perceived Plaintiff as disabled within the meaning of the ADA. Indeed, even if it is assumed that Defendant also regarded Plaintiff as unable to perform as a Replenisher, Loader, or General Laborer (as Plaintiff asserts without the requisite record support, as discussed above), Plaintiff still would not have met his burden of presenting evidence that Defendant viewed him as significantly restricted in his ability to perform a class of jobs, or a broad range of jobs in various classes, within some reasonable geographic area around Plaintiff's place of employment. *Rockwell*, 243 F.3d at 1018. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claim under subsection (C) of the ADA.[21]

---

[21] Defendant, citing considerable authority, also contends that even if Jewel had regarded Plaintiff as disabled, but he was not actually disabled, then he would not be entitled to

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Enter: ___JUL 2 6 2004___

---

"reasonable accommodation" if he was not in fact disabled. (D.E. 15 at 13, n.10 (collecting cases)). As this Court has previously stated, while there is substantial authority in support of the view that a plaintiff is not entitled to "reasonable accommodation" if he is not in fact disabled, the caselaw is not uniform and the competing arguments are sufficiently strong that reasonable minds can disagree. *See Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 WL 1574246, at *11-12 (N.D. Ill. July 12, 2004) (collecting cases). The Seventh Circuit has not spoken to the issue, although two district courts in this district have weighed in supporting the majority view espoused by Defendant. Given the resolution of other issues discussed above, and the factual record in this case, this Court need not choose sides in this debate.